UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

IN THE MATTER OF THE PETITION OF      :          05 Civ. 2752 (CSH)
GIUSEPPE ALLEGRETTI AND RAFFAELE      :
ALLEGRETTI TO PRESERVE TESTIMONY/     :        MEMORANDUM OPINION
EVIDENCE IN AID OF ANTICIPATED        :            AND ORDER
LITIGATION PURSUANT TO RULE 27        :
F.R.C.P._____   :

----------------------------------------------------------- x

HAIGHT, Senior District Judge:

Petitioners Giuseppe and Raffaele Allegretti move for an order to perpetuate certain testimony and preserve documentary evidence on the authority of Fed. R. Civ. P. Rule 27. Specifically, petitioners seek to depose one Bruno Di Costanzo, a New York City resident,[1] and to obtain and preserve documentary evidence in connection with that deposition. Having considered the parties' written submissions and conducted a hearing, for the reasons stated below the Court denies the petition.

## I. BACKGROUND

The following facts are taken from Petitioners' Verified Rule 27 Petition to Preserve Evidence, dated March 9, 2005, Respondent's Affidavit in Opposition, notarized on May 24, 2005, and all accompanying memorandums and affidavits, as well as the petition hearing held on June 1, 2005.

Petitioners Giuseppe and Raffaele Allegretti are brothers who, along with a third brother, Vincenzo Allegretti, were members of an Italian business named All Gloves S.a.S. ("SAS"). For 30 years, SAS sold leather gloves in Italy. Vincenzo, not a party to this present petition, was

---

[1] The last name of this individual is spelled in the court papers as "Di Costanzo" or "Di Constanzo," the latter spelling being employed by his own attorney. The individual signs his affidavit "Di Costanzo," and so I use that spelling throughout this opinion.

responsible for the day to day operations and the general management of SAS. His official title was "Socio Accomandatario," which is the Italian equivalent to a general partner under New York law. Hence, Vincenzo was personally responsible for the company's liabilities. He owned 50% of SAS.

Guiseppe and Raffaele were responsible for the manufacture of goods. According to petitioners, Vincenzo had the managerial skills, while petitioners had the technical skills. As such, petitioners never inquired about the management or finances of SAS. They received a salary from SAS as employees. In addition, the two brothers each owned 25% of SAS stock and served as limited partners of the company—unempowered to make management decisions nor personally responsible for SAS's debts.

Beginning in the 1980s, SAS sold its products in the U.S., initially only through independent agents and distributors. By the early 1990s, SAS decided to create its own U.S. business entity. The company sent Bruno Di Costanzo, a former SAS employee, to the U.S. to create, manage and run the new business.

Di Costanzo was an SAS employee from 1980 through 2004, and as such received a salary from SAS. In addition, in 1992 Di Costanzo created All Gloves Inc. ("AGI"), a New York corporation. Initially AGI was wholly owned by SAS. AGI purchased leather gloves wholesale from SAS and sold them in North America for profit. From 1992 to 2004, when SAS ceased manufacturing activities, SAS was the sole supplier of gloves to AGI.

Di Costanzo attests in an affidavit that he is 54 years of age and in good health. He has lived in Manhattan since the time he moved to the U.S. in 1992, has been married to an American citizen for over five years, and spends 90% of his time in this country. He states his intention of residing nowhere else but the U.S.

While AGI lost revenue during its first two years of business, between 1994 and 2003 AGI

was far more successful than SAS itself. Petitioners claim that during that period AGI made an average yearly revenue of $7.5 million. In some years, AGI was SAS's sole source of income. Petitioners do not know these facts with particular certainty. Rather, whatever knowledge they have of the financial aspects of SAS's business appears to have been acquired solely from conversations, typically informal, between petitioners and Vincenzo at the end of each fiscal year.

The ownership of AGI is hotly contested in this petition. For his part, Di Costanzo alleges he was and is AGI's President and sole shareholder, having purchased all shares of the company from SAS, AGI's prior owner. Di Costanzo alleges that in 1993 or 1994, he and Vincenzo agreed that Di Costanzo would purchase AGI in its entirety for $10,000, which was equivalent to the capital that SAS had contributed to establish AGI. He alleges that he remains, to the present time, the sole shareholder of AGI. By contrast, petitioners claim that SAS was and is the sole shareholder of AGI.

In February 2004, petitioners received a notice of an SAS shareholders meeting where the matter of ceasing operations and activity of SAS, due to financial difficulties, would be discussed. Petitioners allege they were shocked by the notice. Once petitioners received notice of the SAS shareholders meeting, they requested to inspect the books and records of AGI. They were denied on the ground that they had no entitlement to access or inspect AGI's books.

Further disputes broke out between petitioners on the one side, and AGI, Di Costanzo, and Vincenzo on the other. Petitioners were informed, perhaps for the first time, that they had been issued no shares in AGI, and that SAS no longer had any ownership over AGI. They were also informed that AGI's annual sales revenue had sharply declined from $7.5 million to a few thousand dollars.

Petitioners believed that SAS was in excellent financial shape, particularly in light of its sales by AGI. They claim that Vicenzo and Di Costanzo ceased activities of SAS to prevent petitioners

from obtaining their rightful share of AGI's revenue. However, according to Di Costanzo, the true reason SAS was forced to cease activity was that in 2003 the families of Raffaele and Giuseppe improperly sold real estate that represented collateral for loans made by commercial banks to SAS. Di Costanzo contends that due to these real estate transactions, the banks refused to renew their loan to SAS, which was forced to cease manufacturing operations in 2004.

When SAS's operations ceased, AGI began to purchase gloves from other manufacturers. The 2003 real estate transactions have led to litigation in Italy between the petitioners and Vincenzo. Petitioners also instituted a suit against Vincenzo, seeking to remove him as the decision-making partner of SAS. These suits appear to be presently pending in an Italian court.

What is not in dispute is that SAS is presently defunct, if not in law, then in spirit. It has no employees or customers, and does not produce any goods. Meanwhile, Vincenzo has started his own company, evidently taking with him the former SAS employees.

Based on the above information, petitioners say that they plan to file a lawsuit against AGI and Di Costanzo in this court. Petitioners presently allege, *inter alia*, that Di Costanzo was simultaneously receiving a salary as an employee of SAS while also usurping the authority and acting as the sole shareholder of AGI. Petitioners also allege that since AGI and Di Costanzo have reason to believe that petitioners are in the process of commencing a suit against them, they may alter, destroy, conceal, or otherwise make unavailable relevant commercial, accounting and corporate records pertaining to AGI, which petitioners say are vital to a lawsuit against AGI and Di Costanzo.

Finally, petitioners allege that they are presently unable to file a complaint against AGI and Di Costanzo because they lack capacity under Italian law. Without going into detail with respect to the legal landscape in Italy, it is sufficient for present purposes to state that it is petitioners' understanding that because they are limited rather than general partners of SAS, they lack the

capacity to file what would be the equivalent of a derivative lawsuit on behalf of SAS against AGI and Di Costanzo. Should petitioners succeed, by way of the Italian litigation, in ousting Vincenzo from the position of general partner due to his alleged wrongdoings, petitioners would take over general partnership status, and then be able to file suit in American jurisdiction. However, it appears that they are unable to do so unless and until the Italian litigation is resolved in their favor.

When petitioners submitted their first notice of petition on March 9, 2005, they failed to include a time and place for a hearing. This led to my order of March 15, 2005 dismissing the petition without prejudice to refiling in proper form. When petitioners attempted to refile on March 16th, they were denied by the Clerk's office who had prematurely closed the case based on my first order. This led to an issuance of a second order directing the Clerk of the Court to re-open the case and granting petitioners leave to file an amended notice. They did so, this time properly including a time and date for the hearing and properly serving notice on expected adverse parties--that is, Bruno Di Costanzo and All Gloves, Inc. Counsel participated in a hearing on the matter on June 1, 2005.

Petitioners now seek to perpetuate testimony by deposing Bruno Di Costanzo, asserting that he has information relevant to their future complaint. Petitions also seek preservation of documentary evidence in connection with this deposition.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. Rule 27 states as follows:

Rule 27. Depositions Before Action or Pending Appeal

(a) Before Action

(1) Petition. A person who desires to perpetuate testimony regarding any matter that may be cognizable in any court of the United States may file a verified petition in the United States

district court in the district of the residence of any expected adverse party. The petition shall be entitled in the name of the petitioner and shall show; 1, that the petitioner expects to be a party to an action cognizable in a court of the United States but is presently unable to bring it or cause it to be brought, 2, the subject matter of the expected action and the petitioner's interest therein, 3, the facts which the petitioner desires to establish by the proposed testimony and the reasons for desiring to perpetuate it, 4, the names or a description of the persons the petitioner expects will be adverse parties and their addresses so far as known, and 5, the names and addresses of the persons to be examined and the substance of the testimony which the petitioner expects to elicit from each, and shall ask for an order authorizing the petitioner to take the depositions of the persons to be examined named in the petition, for the purpose of perpetuating their testimony.

Section 2 of the rule, "Notice and Service," requires the petitioner to serve, at least 20 days before the date of the hearing, "a notice upon each person named in the petition as an expected adverse party, together with a copy of the petition, stating that the petitioner will apply to the court, at a time and place named therein, for the order described in the petition."

Section 3, "Order and Examination," states, "If the court is satisfied that the perpetuation of the testimony may prevent a failure or delay of justice, it shall make an order designating or describing the persons whose depositions may be taken and specifying the subject matter of the examination and whether the depositions shall be taken upon oral examination or written interrogatories."

Finally, Section 4, "Use of Deposition," states that depositions taken to perpetuate testimony in accordance with this rule are admissible in subsequent actions brought by petitioner in U.S. district court involving the same subject matter, and in accordance with Rule 32(a).[2]

## III. DISCUSSION

In order to prevail on their Rule 27 petition, the petitioners must satisfy three elements. First,

---

[2] Rule 27(b) deals with the taking of depositions "for use in the event of further proceedings in the district court" while an appeal is pending. It is not applicable to the present petition. Rule 27(c), "Perpetuation of Action" states, "This rule does not limit the power of a court to entertain an action to perpetuate testimony."

they must furnish a focused explanation of what they anticipate any testimony would demonstrate. Such testimony cannot be used to discover evidence for the purpose of filing a complaint. Second, they must establish in good faith that they expect to bring an action cognizable in federal court, but are presently unable to bring it or cause it to be brought. Third, petitioners must make an objective showing that without a Rule 27 hearing, known testimony would otherwise be lost, concealed or destroyed. I find that petitioners have failed satisfy the first, and to an extent, the third element, and that the petition must accordingly be denied. I need not consider the second element.

Rule 27 affords relief only to those petitioners seeking to "perpetuate testimony." It is well-established in case law that perpetuation means the perpetuation of *known* testimony. In other words, Rule 27 may not be used as a vehicle for discovery prior to filing a complaint. *See Ash v. Cort*, 512. F2d 909, 912 (3d Cir. 1975) ("Rule 27 is not a substitute for discovery. It is available in special circumstances to preserve testimony which could otherwise be lost."); *Shuster v. Prudential Securities Inc.*, No. 91 Civ. 0901, 1991 WL 102500, at *1 (S.D.N.Y. June 6, 1991); *Petition of the State of North Carolina*, 68 F.R.D. 410, 412 (S.D.N.Y. 1975); *In re Checkosky*, 142 F.R.D. 4, 7 (D.D.C. 1992); *In re Boland*, 79 F.R.D. 665, 668 (D.D.C. 1978); *In Matter of Gurnsey*, 223 F.Supp. 359, 360 (D.D.C. 1963) ("It [Rule 27] is not a method of discovery to determine whether a cause of action exists; and, if so, against whom the action should be instituted.").

Furthermore, Rule 27(a)(1)(5) mandates that petitioners set forth "the substance of the testimony which the petitioner expects to elicit from" would-be deponents. In several cases, Rule 27 petitions have presented allegations that are equivalent to or greater than the specificity of those offered by the Allegrettis in this case and been denied. For example, in *Nevada v. O'Leary*, 63 F.3d 932 (9th Cir. 1995), the State of Nevada filed a Rule 27 petition, hoping to utilize depositions to

garner "the thoughts, thought processes, knowledge, and scientific sources utilized by scientests who were involved in reports and studies pertaining to the suitability of Yucca Mountain as a site for a radioactive waste repository." *Id.* at 934. The scientists who petitioners sought to depose had issued a series of reports and studies over time, some unanimous, others including dissent, debating the merits of such a repository. On the evidence, and despite the reports, the Court found that the "opinions, thoughts, views, and background information" of the scientists were "as yet completely unknown to the petitioner," and that petitioner was more properly seen as "seeking to undertake an inquiry similar to that authorized as discovery under Rule 26." *Id.* at 936. Accordingly, the Court denied the petition. Likewise, in *In re Checkosky*, 142 F.R.D. 4, the Court found that an article in *Business Week* which reported the thoughts and opinions of a person petitioners sought to depose failed to present a sufficient quantum of information to demonstrate that petitioners had adequate knowledge of the substance of the testimony they were seeking.

By contrast, in *Mosseller v. United States*, 158 F.2d 380 (2d Cir. 1946), a petitioner's son was severely injured while serving on duty as a seaman aboard a United States naval vessel, allegedly due to the negligence of a fellow seaman. Petitioner sought to bring suit against the government under the Suits in Admiralty Act. Prior to doing so, that Act required her to file a claim with the United States. Petitioner could file suit in federal court only if either her claim had been administratively disallowed, or sixty days had elapsed from its filing. Meanwhile, medical opinion indicated that her son might die before either the U.S. disallowed the claim or sixty days had elapsed from time of filing. Petitioner therefore sought a Rule 27 order allowing her to take her son's deposition testimony prior to filing suit in the case.

The Second Circuit, under an abuse of discretion review, upheld the district court's

conclusion that the unfavorable medical prognosis satisfied the showing that there was a possible

failure or delay of justice sufficient to call for a Rule 27 order.  *See id.* at 382.  There, the testimony

sought to be deposed was known to petitioner.[3]

The present petitioners say very little about the substance of Di Costanzo's testimony.

Paragraph 21 of their Verified Rule 27 Petition states that "Di Costanzo possesses invaluable

knowledge about the facts of the expected litigation and other facts surrounding Petitioners' claims,"

but does not go further to state what that invaluable knowledge is.  In their supporting memorandum

of law, dated Mar. 9, 2005, at 3, petitioners state that "[b]y the proposed discovery, Petitioners intend

to establish that they are (directly or indirectly) shareholders or beneficial shareholders of AGI."[4]

Reading through petitioners' papers, one may reasonably infer that this is precisely what they hope

to find through the deposition of Di Costanzo and production of documents--that they are beneficial

shareholders of AGI.  However, this conclusion appears to be more aspirational than known.

Further evidence that petitioners are not seeking to perpetuate known testimony can be found

_____

[3] Two cases, both in this district, appear to hold a view contrary to that in the above cases--
namely, that a Rule 27 deposition may proceed despite petitioner's lack of knowledge of the
substance of the testimony sought.  *See In re Pacific Tech. Corp.*, No. 00 Civ. 2622, 2000 WL
1634393 (S.D.N.Y. Oct. 31, 2000), *citing* 6 Moore's Fed. Practice § 27.14[1] ("[Rule 27's] broad
language directly reflects the equitable origins of the device and the more specific requirements
should be read through the eyes of a Chancellor with focus upon the malleable character of
orders to perpetuate and their ability to be tailored to specific fact situations."), and *In the Matter
of Petition of Alpha Indus., Inc.*, 159 F.R.D. 456 (S.D.N.Y. 1995).  These decisions run contrary
to the clear majority of reported cases, and I respectfully choose not to follow them.  Moreover,
while I appreciate that I must consider petitioner's Rule 27 petition as a Chancellor at equity, the
specific facts of this case do not impress upon me a need to perpetuate the testimony sought by
petitioners.

[4] Petitioners' use of the noun "discovery" possibly constitutes a Freudian slip revealing the true
purpose of the petition.  As further noted in text, a stated desire for "discovery" runs like at
*leitmotiv* through petitioners' papers.  The difficulty is that discovery is not a legitimate purpose
for a Rule 27 petition to perpetuate known testimony.

by what *is* stated in petitioners' papers.  Paragraph 18 of the Verified Petition states, "Petitioners bring this Petition to preserve *and establish facts* through testimony, documents and physical evidence regarding their rights and claims and other matters related to the expected litigation described above" (emphasis added).  Page 3 of their memorandum states, "Petitioners are *seeking discovery* concerning a 'matter that may be cognizable in any court of the United States'" (quoting Rule 27) (emphasis added).  Finally, on pages 3-4 of the memorandum, petitioners state they "will be prejudiced and irreparably harmed in that they will be unable to adequately prepare any claims *they may have* if all physical evidence is not preserved" (emphasis added).  Based on the totality of circumstances, I find that petitioners are seeking a Rule 27 order not to collect known testimony but to ascertain unknown information, an undertaking that falls outside the limited purposes of the Rule.

In addition to failing the first element, petitioners also fail to demonstrate the third, that there is a danger that without Rule 27 relief, the deposition testimony of Di Costanzo would be lost.  Rule 27(a)(3) requires the Court to find that "the perpetuation of the testimony may prevent a failure or delay of justice."  Courts have interpreted this rule to mean that petitioners "make a particularized showing that the testimony needs to be taken in advance of the contemplated action."  *In re Checkosky*, 142 F.R.D. at 7 (citing cases).  Other cases find this requirement to be met by geographical constraints, advanced age, or the passage of time.  *See, e.g., Sims v. Abrams*, 389 F.2d 148, 150 (5th Cir. 1967) (potential deponent was imminently departing for Peru); *Texaco, Inc. v. Borda*, 383 F.2d 607 (3rd Cir. 1967) (permitting deposition of a witness of advanced age in suit that had been stayed pending resolution of parallel criminal prosecution).

But for the ascertainment of information in advancement of a complaint—a proscribed goal—I find no reason to require Di Costanzo to testify prior to a complaint.  Given Di Costanzo's

relative youth and his ties to this venue, there is little reason to believe that without a Rule 27 deposition his testimony in a future action would be lost. On these facts, I find no reason to rule in favor of a Rule 27 petition.

I suspect that of the two things that petitioners are asking for—Di Costanzo's testimony and production of certain documents—they value production of the latter far greater than the former. For all intents and purposes, Di Costanzo would be a hostile witness, and it is reasonable to believe that his deposition testimony would not be significantly different from his affidavit submitted in opposition to the petition. By contrast, petitioners take pains to produce in great detail documents they seek from either Di Costanzo or AGI. These documents include AGI's certificate of incorporation, minutes of board meetings and shareholder meetings, proof of payment of dividends, correspondence, memoranda, and records prepared by Di Costanzo, tax returns, balance sheets, contracts between AGI and other parties, and all correspondence between Vincenzo and Di Costanzo at any time since the incorporation of AGI. *See* Petition at Ex. A.

It is unclear from precedent whether a documents-only production would be legitimate under Rule 27, which admittedly is called "*Depositions* Before Action or Pending Appeal" (emphasis added). In any event, I need not decide this question now. Regardless of whether petitioners seek to perpetuate testimony in deposition or document-form, the general principle remains the same: Rule 27 may not be used as a vehicle for discovery in contemplation of an action. Here, plaintiffs have failed to demonstrate that the information that lies within the sought-after documents is known to the petitioners. Vague and generalized statements regarding the overall health of the business made by Vincenzo are not enough to demonstrate the particularized showing required by Rule 27.

## IV. CONCLUSION

## IV. CONCLUSION

For the foregoing reasons, petitioners' Rule 27 petition is hereby denied.

It is SO ORDERED.

Dated: New York, New York
      August 2, 2005

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE
